ALLEN v. GRAND LODGE, K. P., STATE OF TENNESSEE, etc.
—95 S. W. (2d) 65.

Middle Section.   January 18, 1936.

Petition for Certiorari denied by Supreme Court, June 13, 1936.

Gwosdof, Fox & Polston, of Nashville, for appellant administrator. Keeble & Keeble, of Nashville, for appellee Grand Lodge.

CROWNOVER, J. This is a suit, by the administrator, to recover $400 on a life insurance policy issued by the Grand Lodge, Knights of Pythias of Tennessee, to Andrew Allen as a member of Fidelity Lodge No. 32 at Nashville, the bill alleging that all premiums on the policy and dues to the order had been paid up to the date of the death of the insured on January 21, 1933.

The defendant Grand Lodge answered and denied liability on the grounds: (1) That Fidelity Lodge No. 32 was suspended for non-payment of dues and had not been in existence as a subordinate lodge since October 20, 1932; and (2) that Andrew Allen was in default in the payment of his dues to the local lodge at the time of his death, and the local lodge, Fidelity Lodge No. 32, was in default to the Grand Lodge.

The cause was tried on depositions, and the special chancellor found that complainant's evidence as to payment of dues was not satisfactory; that Fidelity Lodge No. 32, the local lodge, was in default from and after October 1, 1932, and was not in good standing, and under the constitution and by-laws of the Grand Lodge automatically suspended; that Andrew Allen was in default for the quarter commencing October 1, 1932, and the quarter commencing January 1, 1933; and the local lodge was in default in their assessments for both quarters, and he dismissed complainant's bill.

Complainant excepted to said decree and appealed to this court, and has assigned errors which raise only the propositions:

(1) That the attempted amendment to the constitution of the order in July, 1932, was invalid.

(2) The court erred in holding that such amendment was valid as to policies in force.

(3) The court erred in holding that defendant had not waived the right to a forfeiture and was not estopped to assert the same, because of its course of dealings with all of its members, particularly Andrew Allen.

(4) That Andrew Allen's dues were paid for the quarter beginning October 1, 1932, and ending January 1, 1933.

(5) That his dues for the quarter beginning January 1, 1933, should have been paid by the local lodge out of his sick benefits.

"The Grand Lodge Knights of Pythias of North America, South America, Europe, Asia, Africa and Australia, Jurisdiction of Ten-

nessee," is a colored fraternal order, organized under the laws of Tennessee.

Its constitution provides for a Grand Lodge and subordinate lodges. Fidelity Lodge No. 32 was a subordinate lodge in Nashville.

The constitution required that every member carry an insurance policy in the order in the sum of $450 or $400.

Andrew Allen was a charter member of Fidelity Lodge No. 32, and continued to be a member for 31 years, until just before his death on January 21, 1933, at the age of 82.

Just before his death his house was destroyed by fire and his policy and receipts were burned.

Prior to July, 1932, his dues and premiums on his policy collected by the subordinate or local lodge amounted to $4.05 per quarter ($1.35 a month), which was payable quarterly in advance. The constitution required that the local lodge remit to the Grand Lodge $2.50 out of this sum, quarterly, in advance. This $2.50 covered endowment, burial, and Supreme and Grand Lodge taxes.

The policies contained the following provision:

"Due first, however, to such modifications as may be made from time to time by the Grand Lodge."

At a meeting of the Grand Lodge in Franklin, Tennessee, on July 28, 1932, the constitution of the Grand Lodge was amended to raise the rate of dues to the Grand Lodge from $2.50 to $4 per quarter, and to provide that any lodge failing to forward its report and endowment tax by the 20th day of the first month of each quarter should stand automatically suspended from the benefits of the endowment department.

It was contended by the Grand Lodge that Fidelity Lodge No. 32 was automatically suspended on October 20, 1932, for failure to remit dues, and was notified of such suspension on February 28, 1933, and further that Andrew Allen had paid no dues for the October, 1932, quarter, or the January, 1933, quarter to the local lodge; therefore his administrator was not entitled to recover on the policy.

1. The first assignment of error, to the effect that the attempted amendment to the constitution of the order in July, 1932, is invalid, is not well made and must be overruled.

The section of the constitution providing for amendments is as follows:

"Article XVII. Alterations and Amendments.

"The Constitution shall not be altered nor amended unless the proposed alterations or amendments be submitted from five different Subordinate Lodges at a regular session of the Grand Lodge; the change having been approved by a vote of two-thirds (2/3) of the members of the Grand Lodge present, it shall be considered part of the Constitution, annulling and repealing all such parts as are in con-

flict therewith. Provided, however, that the proposed alterations or amendments shall be submitted in writing over the Subordinate Lodge seal, to the Grand Attorney, ten days prior to the meeting of the Grand Lodge.''

It is contended that it is not shown that requests in writing from five different lodges, over the subordinate lodge seal, were made to the Grand Attorney ten days before the meeting of the Grand Lodge.

A request in writing from the Crawford Tate Lodge No. 234 was filed, and a typewritten resolution with the typewritten names of five men attached. But complainant contends that it is not shown what lodges were represented by these men.

A typewritten copy of the amendment, from the minutes, bearing the signatures of the Grand Chancellor and the Grand Keeper of Records and Seals, under seal of the Grand Lodge, was admitted in evidence, which is as follows:

''Enactments at the Session of the Grand Lodge Knights of Pythias Held in Franklin, Tennessee, July, 1932, Amending Endowment Laws of The Constitution.

''Be it enacted that the Quarterly Budget as outlined on Page 17, Article XI, Section 2, be increased from $2.50 per quarter to $4.00 per quarter, on all policies paying $400.00 including endowment and burial, issued prior to the A, B, C & D Class Policies which went into effect January 1, 1930, and which are shown on Pages 52 and 53 of the Grand Lodge Constitution, the high death rate making this imperative.

''Be it enacted that any member may have the right to surrender his policy which pays $400.00 including endowment and burial, and take instead, a policy paying $200.00 including endowment and burial, and pay for the same $2.00 per quarter, instead of the $4.00 provided in the above enactment. This smaller policy subject to restoration of the old policy, if at any time in the future the member feels himself able to pay the increased premium, and pays up the entire amount that would have been paid had the old policy been kept in force for the full time up to that date.

''Provided, first, That the member is in good health at the time of his application for restoration of his old policy.

''Provided, further, that the new policy shall bear the same date as the old policy, and shall be in full benefits at once, providing also that the old policy shall have matured. The good of the Order demands the same.

''Be it enacted that the First Clause of Section 8, Article III of the Endowment Laws as printed on Page 55 of the Grand Lodge Constitution be amended so as to read as follows: Sec. 8. First Clause.— Any Lodge failing to forward its report and Endowment Tax by the 20th day of the first month of each Quarter, viz., January, April, July

and October of each year, shall stand automatically suspended from the benefits of the Endowment Department, provided that any Lodge may reinstate itself by paying the full indebtedness accrued up to the time of such payment, including the amount standing against it at the time of its suspension, and its good standing date from the time of the acceptance of such report; provided, further, that should a Lodge lose a member during such suspension, the beneficiary of such member shall not be entitled to, nor receive the benefits from the Endowment Department.''

''The above enactments were adopted by the vote of the Grand Lodge Knights of Pythias, N. A., S. A., E., A., A. & A., Jurisdiction of Tennessee, unanimously, July, 1932 at Franklin, Tennessee.

''N. N. Reynolds, G. C.
''F. J. Ewing, G. K. R. S. [Seal.]''

This amendment certified by the secretary under the seal of the lodge was admissible in evidence. Code, section 9740.

Some of the officers of the Grand Lodge testified that they were present and that the amendment was properly passed, but they were asked whether they knew what local lodges each of the five men belonged to, and they were unable to state.

This amendment is set up in the answer, but is not attacked in the pleading filed by the complainant, and the above evidence was elicited on cross-examination. There is a presumption that by-laws when properly proven were validly passed, and there is no evidence to overcome this presumption. In other words, the oral evidence adduced does not establish the fact that the amendment was properly and legally passed, nor does it show that the amendment was not properly passed so as to overcome the presumption.

''The presumption of law is that a corporation exercises its powers according to law. Its by-laws are therefore presumptively valid, and the burden of overthrowing them is upon the party who asserts their invalidity.'' 14 C. J., 374, sec. 481; 1 Fletcher's Cyc. Corporations (1st Ed.), 988, sec. 487.

By statute in Tennessee (Code, section 9740), it is provided: ''In actions between corporations and their stockholders, a copy of the proceedings of the board of directors, and the subscription and other books of the company, certified by the secretary under the corporate seal, shall be evidence.'' This statute applies to an action against a benefit society by the beneficiaries under the certificate.

In the case of Page v. Knights and Ladies of America, 61 S. W., 1068, 1071, the Court of Chancery Appeals said:

''This is not technically a suit between the corporation and a stockholder, but it is in substance that, and we are of opinion the statute applies; that is, that a certified copy made according to the statute would have been evidence. It would not have been the only evidence,

but the original books might have been produced, as above indicated. It was necessary, however, that one or the other should have been offered, in order to satisfy the rule as to the best evidence. The exception, therefore, is sustained, to the effect that the evidence offered was not the best evidence, and the testimony was therefore improperly received.

"Upon the argument it was insisted that even if the original books had been offered, or the copy above referred to, it might have been shown by oral evidence that the supposed minutes were not in truth the acts of the corporation, because of failure to carry out certain requirements. This is true, but in no way impeaches the application of the rule. Because what is apparently the best evidence may be impeached, and shown to be no evidence, does not destroy the primary character of such best evidence, until the impeachment is actually effected."

2. It is insisted that this amendment cannot affect policies that had been issued prior to the amendment. There is nothing in this proposition, as the policy contains the following provision: That in event of death the company will pay $350 and $50 burial expenses, etc., "due first, however, to such modifications as may be made from time to time by the Grand Lodge." This means that the company's liability is subject to such modifications as may be made in the future by the Grand Lodge. Such provisions are valid, and the assured and beneficiary are bound by them. Page v. Knights and Ladies of America (Tenn. Ch. App.), 61 S. W., 1068; Supreme Lodge v. La Malta, 95 Tenn., 157, 31 S. W., 493, 30 L. R. A., 838; 2 Michie's Tenn. Digest, 461, 462.

3. There is nothing in the course of dealing by the defendant Grand Lodge with its members and Allen to estop it to set up these defenses, and it has not waived any of its rights. The facts that the local lodge collected insufficient dues and did not pay him sick benefits are not sufficient to estop the Grand Lodge, and this assignment must be overruled.

4. The assignment that the court erred in holding that all of Allen's dues were not paid for the quarter beginning October 1, 1932, and ending January 1, 1933, is not well made and cannot help appellant for two reasons: First. We have held that the amendment increasing the dues was valid; hence his dues were not paid to January 1, 1933. Second. Even though they were thus paid to January 1, 1933, the assured only had 20 days of grace as provided by the constitution, and he died on January 21, 1933; hence his grace had expired before his death. Wolfe v. Mutual Life Ins. Co., 3 Tenn. App., 199.

The 30 days of grace statute (Code, sec. 6179, subsec. 2) does not

apply to fraternal and benevolent associations (Code, secs. 6360, 6184).

The records of William A. Lewis, secretary of the endowment board of the Grand Lodge, show that on October 1, 1932, the local lodge remitted for Andrew Allen $5 for dues for the April to July quarter and the July to October quarter, 1932.

The report of the Fidelity Lodge for the quarter ending September 29, 1932, contains the following entry:

"Members in Good Standing Last Report Who Have Also Paid Endowment and Burial Taxes This Quarter.

"1. Allen, Andrew     Endowment     Burial     S. & G. L.
                                   Tax         Tax
                         3.50         1.00       .50"

And on its back is typewritten, "Report on dues for 2nd and 3rd quarters."

Thus the report from the Fidelity Lodge shows that Allen's dues were paid up to the October quarter, and the books of the Grand Lodge show payment to the 1st of October.

However, complainant filed a receipt of J. H. Threalkill, Master of Finance of the local lodge, for $2.70, stating "Lodge Dues Nov. & Dec." The receipt was as follows:

"Nashville 10/17. 1932.

"Received of Andrew Allen two and 70/100 Dollars Fidelity Lodge #32 K. of P. Lodge dues Nov. Dec. $2.70.

"J. H. Threalkill, M. of F."

But this payment will not satisfy his dues either under the old constitution or the amendment; hence this assignment must be overruled. The dues were payable quarterly in advance. The receipt was only prima facie evidence of payment. 4 Cooley's Briefs on Insurance (2 Ed.), 3670.

5. The assignment that the court erred in not applying his sick benefits to his dues is not well made. The complainant alleged in his bill that the assured's dues were paid, and nothing is alleged about the sick benefits. It was incidentally proved by witnesses that he was sick for 3 weeks and was entitled to $9 sick benefits, which were not paid because the local lodge had no funds.

The constitution provides for the appointment by each local lodge of a relief committee, who "shall visit the sick and for their relief cause an order to be drawn weekly for not less than $3. . . . It shall be the duty of the committee to deduct from the benefits a sufficient amount to keep the brother in good standing, and pay the same over to the Master of Finance."

But it further provides:

"No member shall receive benefits until recommended by the Relief

Committee, accompanied with Health Certificate from a regular practicing physician, setting forth the nature of the ailment. . . .

"A member while receiving benefits from the Lodge cannot become in arrears so as to debar him therefrom; the Relief Committee being authorized to pay the Master of Finance from the amount drawn for his weekly benefits, a sum sufficient to prevent him becoming in arrears to the Local Lodge to the amount of three months' dues."

The only testimony about the sick benefits is that the assured had been sick 3 weeks prior to his death and was entitled to $9, but it had not been paid because the local lodge had no money with which to pay it.

He is not entitled to sick benefits for two reasons: First. There is no evidence that the Grand Lodge was notified of his illness and that it was accompanied with a health certificate from a practicing physician setting forth the nature of his ailment, as required by the constitution; hence it is not shown that he had complied with the requirement so as to obtain the sick benefits. As above stated, the amendment provides:

"Any Lodge failing to forward its report and Endowment Tax by the 20th day of the first month of each Quarter, viz., January, April, July and October of each year, shall stand automatically suspended from the benefits of the Endowment Department; provided that any Lodge may reinstate itself by paying the full indebtedness accrued up to the time of such payment, including the amount standing against it at the time of its suspension, and its good standing date from the time of the acceptance of such report; provided, further, that should a Lodge lose a member during such suspension, the beneficiary of such member shall not be entitled to, nor receive the benefits from the Endowment Department."

Second. The constitution provides that he is not entitled to sick benefits when his dues are in arrears, as follows:

"Member Not in Good Standing at Death.—In the event of death of a member who at the time of his death, was in arrears for his fines, taxes, dues and assessments to the amount of Four ($4.00) Dollars, no benefits shall be paid. . . ."

His dues were in arrears and he was not entitled to sick benefits; hence they cannot be applied on his dues. Wolfe v. Mutual Life Ins. Co., 3 Tenn. App., 199.

"It is, of course, obvious that, where a condition of forfeiture in a contract of insurance between a mutual benefit society and a member is self-executing, a member who is in default in his payments to the association loses his rights as a member and is not in good standing within the meaning of his certificate." 4 Cooley's Briefs on Insurance (2 Ed.), 3695.

It results that all the assignments of errors are overruled and the

decree of the chancellor dismissing the bill is affirmed. The cost of the cause, including the cost of the appeal, is decreed against the appellant.

Petition for a rehearing was denied.

Faw, P. J., and DeWitt, J., concur.